**WOMEN'S COMMUNITY HEALTH CENTER, INC., et al., Plaintiffs,**

v.

**Richard S. COHEN, Attorney General of the State of Maine, Defendant.**

**Nancy H. STEWART, Plaintiff,**

v.

**Michael PETIT et al., Defendants.**

**Civ. Nos. 79–162 P, 79–165 P.**

United States District Court,
D. Maine.

Sept. 13, 1979.

Roy Lucas, Lynn I. Miller, Louis R. Stern, Lucas & Miller, Washington, D. C., Cushman D. Anthony, William H. Howison, Anthony, Howison & Hayden, Portland, Me., for plaintiffs in No. 79–162 P.

Ralph I. Lancaster, Jr., Portland, Me., James Bopp, Jr., Francis & Brames, Terre Haute, Ind., for potential intervenors.

Gerald F. Petruccelli, Robert E. Mittel, Portland, Me., for plaintiffs in No. 79–165 P.

Richard S. Cohen, Atty. Gen., James E. Smith, Asst. Atty. Gen., Augusta, Me., for defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Chief Judge.

Plaintiffs in these consolidated actions under the Civil Rights Act of 1871, 42 U.S.C. § 1983, seek declaratory and injunctive relief against the enforcement of two statutes regulating the performance of abortions, recently enacted by the Maine Legislature and approved by the Governor, to take effect on September 14, 1979. The first of these statutes, 22 Me.Rev.Stat.Ann. § 1597, enacted by Chapter 413 of the Public Laws of Maine, 1979, requires parental notification of an unemancipated minor's decision to undergo an abortion. The second statute, 22 Me.Rev.Stat.Ann. § 1598, enacted by Chapter 360 of the Public Laws of Maine, 1979, requires the attending physician to counsel a woman in order to ensure that her consent to an abortion is truly informed, and further requires a 48-hour waiting period between the informed consent counseling and the performance of the abortion. Both statutes are challenged as impermissibly interfering with the constitutional right of a woman, in consultation with her physician, to terminate her preg-

nancy, as that right was established by *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.E.2d 147 (1973), and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). The matter is now before the Court on plaintiff's motions for a preliminary injunction. A hearing on the motions was held on September 6, 1979. A preliminary record has been made, and the issues have been comprehensively briefed and argued.

## I

### *The Parties*

Plaintiffs are Women's Community Health Center, Inc. (WCHC), a Florida corporation providing nonmedical aspects of abortion care in South Portland, Maine; Paul G. Savidge, M.D., a duly licensed Maine physician who regularly performs abortions at WCHC, who appears on his own behalf and as representative of a class, certified by the Court, consisting of all physicians in the State of Maine who, on a regular basis, treat adult and minor women seeking abortion services; and Nancy H. Stewart, M.D., a duly licensed Maine physician practicing medicine in Bar Harbor, Hancock County, Maine, who appears on her own behalf and as representative of a class, certified by the Court, consisting of all physicians in the State of Maine who perform abortions whose patients are affected by the passage of Laws of Maine, 1979, c. 360 and c. 413.

Defendants are Richard S. Cohen, Attorney General of the State of Maine; Michael Petit, Commissioner of the Department of Human Services of the State of Maine; and Michael Povich, District Attorney for Prosecutorial District 7, which includes Hancock County. Intervening defendants are Dr. Ronald and Mary Lou Carroll who have been permitted to intervene on behalf of themselves as parents of an unmarried minor daughter of childbearing age.

## II

### *The Preliminary Injunction Standard*

■ In the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Levesque v. Maine*, 587 F.2d 78, 80 (1st Cir. 1978); *Grimard v. Carlston*, 567 F.2d 1171, 1173 (1st Cir. 1978); *Morgan v. Kerrigan*, 509 F.2d 618, 619 (1st Cir. 1975); *Keefe v. Geanakos*, 418 F.2d 359 (1st Cir. 1969); *Automatic Radio Manufacturing Co. v. Ford Motor Co.*, 390 F.2d 113 (1st Cir.), *cert. denied,* 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968). In order to prevail, plaintiff must satisfy each of the four criteria. *Id.*

■ The parties agree that to the extent the challenged statutory provisions impermissibly burden a woman's abortion decision, plaintiffs have clearly shown that they will suffer irreparable injury if the injunction is not issued, that such injury outweighs any harm which granting injunctive relief would inflict on defendants, and that the public interest will not be adversely affected, indeed will be served, by the granting of the injunction. The only issue to be decided, therefore, is whether plaintiffs have demonstrated a sufficient likelihood of success on the merits. To sustain their burden, plaintiffs must show at most a probability, *Keefe v. Geanakos, supra* at 360; *Automatic Radio Manufacturing Co. v. Ford Motor Co., supra* at 115, and at least a substantial possibility, *Tuxworth v. Froehlke*, 449 F.2d 763, 764 (1st Cir. 1971), of prevailing on the merits.[1]

---

1. Recently, several circuit courts have adopted a more flexible test for the issuance of a preliminary injunction. That test, stated in *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247 (2d Cir. 1973), provides that a preliminary injunction should issue on a showing of *either*

   (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make

## III

### *The Constitutional Standard*

■ In *Roe v. Wade, supra,* the Supreme Court held that the constitutional "right of privacy . . . is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Id.,* 410 U.S. at 153, 93 S.Ct. at 727. The Court explained that this right, although fundamental, "is not unqualified and must be considered against important state interests in regulation." *Id.* at 154, 93 S.Ct. at 727. The Court recognized that "regulation limiting . . . [fundamental] rights may be justified only by a 'compelling state interest' . . . and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake." *Id.* at 155, 93 S.Ct. at 728 (citations omitted). The Court went on to say that the State has a valid interest in the mother's health, which becomes compelling after the first trimester of pregnancy, and also a valid interest in the protection of a potential human life, which becomes compelling when the fetus becomes viable, usually during the third trimester of pregnancy. *Id.* at 163–64, 93 S.Ct. 705. But the Court concluded that during the first trimester "the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician," *id.* at 164, 93 S.Ct. at 732, "free of interference by the State." *Id.* at 163, 93 S.Ct. at 732.

■■ Decisions subsequent to *Roe* make clear that not all regulation of first trimester abortions is impermissible. If the challenged state action does not impinge upon a woman's decision to have an abortion and does not place obstacles in the path of effectuating that decision, the regulation need only be justified by a rational relationship to a legitimate state purpose. *Maher v. Roe,* 432 U.S. 464, 478–80, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977) (state funding for childbirth but not abortion permissible). *See Menillo v. Connecticut,* 423 U.S. 9, 11, 96 S.Ct. 170, 46 L.Ed.2d 152 (1975) (per curiam) (state criminal statute proscribing unlicensed physician from performing abortions does not impinge on abortion decision); *Baird v. Department of Public Health,* 599 F.2d 1098 at 1102 (1st Cir. 1979). If the regulation does impinge upon a woman's abortion decision or the means of effectuating it, the regulation still "is not unconstitutional unless it *unduly burdens* the right to seek an abortion." *Bellotti v. Baird,* 428 U.S. 132, 147, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976) *(Belotti I)* (emphasis supplied). *See also Maher v. Roe, supra,* 432 U.S. at 473–74, 97 S.Ct. 2376. If the regulation unduly burdens the abortion decision, it must be justified by a compelling state interest. *Carey v. Population Services International,* 431 U.S. 678, 686, 688, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Roe v. Wade, supra,* 410 U.S. at 155, 93 S.Ct. 705.[2] If, on the other hand, the regulation impinges upon the abortion decision without unduly burdening it, it will be sustained if it reasonably furthers a proper state purpose. *See Planned Parenthood v. Danforth, supra* note 2, at 65–67, 96 S.Ct. 2831 (State can require prior written consent of abor-

---

them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Id.* at 250 (emphasis supplied). *Accord, Fennell v. Butler,* 570 F.2d 263, 264 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978); *William Inglis & Sons. Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir. 1975). *See also Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.,* 545 F.2d 1096, 1098 (7th Cir. 1976). This formulation for the granting of preliminary injunctions, however, has not been adopted by this Circuit.

**2.** Without explicitly applying the compelling state interest test, the Court has strictly scrutinized and struck down state laws requiring that abortions be performed only in licensed hospitals, *Doe v. Bolton, supra,* 410 U.S. at 195, 93 S.Ct. 739, that a three-doctor committee approve all abortions, *id.* at 197, 93 S.Ct. 739, that two doctors aside from the patient's consultant concur in the patient's and that consultant's decision, *id.* at 199–200, 93 S.Ct. 739, that physicians not use the salene amneocentesis method for inducing abortion in the second trimester of pregnancies, *Planned Parenthood v. Danforth,* 428 U.S. 52, 79, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), that married women get spousal approval for the abortion, *id.* at 69, 96 S.Ct. 2831, and that minors get parental consent, *id.* at 74–75, 96 S.Ct. 2831.

tion patient), 80–81, 96 S.Ct. 2831 (physician reporting and recordkeeping requirement related to patients' health upheld). Thus, "[a]s *Whalen* [*v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)] makes clear, the right in *Roe v. Wade* can be understood only by considering both the woman's interest and the nature of the State's interference with it." *Maher v. Roe, supra,* 432 U.S. at 473, 97 S.Ct. at 2382.

With these principles in mind, the Court will separately consider the constitutionality of each of the challenged Maine statutes.

## IV

### *The Constitutionality of the Challenged Maine Statutes*

Defendants concede that the challenged statutory provisions impinge upon a woman's abortion decision or her ability to effectuate that decision. Defendants also agree that the statutes apply to first trimester abortions, as well as second and third trimester abortions. Defendants offer no compelling state interest to sustain the statutes. Accordingly, the Court must determine with respect to each statutory provision whether it imposes an undue burden on a woman's constitutional right, in consultation with her physician, to choose to terminate her pregnancy.

### A. *22 Me.Rev.Stat.Ann. § 1597: Parental Notification*

Section 1597 of 22 Me.Rev.Stat.Ann., which is set forth in the Appendix, requires a physician, prior to performing an abortion on an unemancipated minor who is less than 17 years of age, to give actual notice to one of her parents or guardians at least 24 hours before performing the abortion. If actual notice cannot be given, the physician must serve written notice by certified mail to the last known address of the parent or guardian at least 48 hours before performing the abortion. If neither form of notice to a parent or guardian is possible, the physician must notify the State Department of Human Services in writing of his inability to give notice, at least 24 hours in advance of performing the abortion. If in

the physician's judgment the life or health of the minor will be endangered if the abortion is not performed immediately, the foregoing notice requirements shall not apply, but the physician must notify a parent or guardian of the abortion within 24 hours after the abortion or notify the Department of his inability to give such notice. The statute specifically provides that nothing therein shall require the consent of the minor's parents or guardian to her abortion. Violation of the statute subjects a physician to criminal liability under 22 Me.Rev.Stat. Ann. § 47.

The Court is persuaded that plaintiffs have demonstrated a sufficient likelihood of success in establishing that Section 1597 unduly burdens the minor woman's abortion decision and hence is unconstitutional.

Much of the debate over the constitutionality of a statute mandating parental notification has been foreclosed by the recent Supreme Court decision in *Bellotti v. Baird,* —— U.S. ——, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II*). The Massachusetts statute challenged in that case required either parental consent or a court order for an unemancipated minor to receive an abortion. The minor could obtain a court order only after she had attempted to get consent from her parents (if they were available), and the court was required to give notice to the parents (if they were available). Mr. Justice Powell, writing for a four-justice plurality, held that the statute fell short of constitutional standards in two respects:

> First, it permits judicial authorization for an abortion to be withheld from a minor who is found by the superior court to be mature and fully competent to make this decision independently. Second, it requires parental consultation or notification in every instance, without affording the pregnant minor an opportunity to receive an independent judicial determination that she is mature enough to consent or that an abortion would be in her best interests.

At ——, 99 S.Ct. at 3052 (citation omitted).

The opinion recognized the importance of parents' rights to raise and instruct their

children and of the State's interest in assuring that minors are thoroughly informed and advised when making the decision of whether or not to have an abortion. *Id.* at ——, 99 S.Ct. 3035. It also acknowledged that parental notification and consultation requirements may be imposed on many of a minor's important decisions, and that a State can reasonably "determine, *as a general proposition,* that such consultation is particularly desirable with respect to the abortion decision." *Id.* (emphasis supplied). Mr. Justice Powell noted, however, that

> [t]he abortion decision differs in important ways from other decisions that may be made during minority. The need to preserve the constitutional right and the unique nature of the abortion decision, especially when made by a minor, require a State to act with particular sensitivity when it legislates to foster parental involvement in this matter.

*Id.* at ——, 99 S.Ct. at 3047. The opinion continued:

> As the District Court recognized, "there are parents who would obstruct, and perhaps altogether prevent, the minor's right to go to court." . . . There is no reason to believe that this would be so in the majority of cases where consent is withheld. But many parents hold strong views on the subject of abortion, and young pregnant minors, especially those living at home, are particularly vulnerable to their parents' efforts to obstruct both an abortion and their access to court. It would be unrealistic, therefore, to assume that the mere existence of a legal right to seek relief in superior court provides an effective avenue of relief for some of those who need it the most.

*Id.* at ——, 99 S.Ct. at 3050 (citation omitted).[3] The practical obstacles that some parents might place in the way of their child seeking an abortion led the plurality to conclude that the parent notification requirement "would impose an undue burden upon the exercise by minors of the right to seek an abortion." *Id.* Accordingly, the Court determined that

> every minor must have the opportunity—if she so desires—to go directly to a court without first consulting or notifying her parents. If she satisfies the court that she is mature and well-informed enough to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent. If she fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion nevertheless would be in her best interest. If the court is persuaded that it is, the court must authorize the abortion.

*Id.*

■ Mr. Justice Powell's opinion, while not a majority opinion,[4] is persuasive authority for this Court in holding that Maine's parental notification statute has a substantial probability of being found unconstitutional at a trial on the merits.

On its face, Section 1597 impermissibly requires that parents be informed in every instance of the minor's decision to seek an abortion. Although the Maine statute, unlike the Massachusetts statute struck down in *Bellotti II,* does not require parental consent, it fails to meet the constitutional standard defined in Mr. Justice Powell's opinion because it provides no alternative permitting a minor to obtain an abortion without parental notification.

---

**3.** Similar considerations were noted by the court in *Wynn v. Carey,* 582 F.2d 1375, 1388 n.24 (7th Cir. 1978):

There are a variety of reasons why it could be inconsistent with a minor's best interests to have one or both of her parents know of her pregnancy. For example, parents may physically abuse the minor upon disclosure of the pregnancy. Rather than inflicting physical harm, parents may force the pregnant minor to enter into a marriage which

she does not want. Others may compel the minor to continue her pregnancy simply as punishment.

**4.** Only four Justices subscribed to the plurality opinion. Four other Justices refused to address the issue *Bellotti II, supra* at ——, 99 S.Ct. 3035 (Stevens, J., concurring) and Mr. Justice White dissented. *Id.* at ——, 99 S.Ct. 3035 (White, J., dissenting).

**548**

The abbreviated record before the Court at this time supports a finding like that made in *Bellotti II* that mandatory parental notification will prove to be unduly burdensome on the abortion decision of some minors. Plaintiffs have introduced affidavits of expert witnesses showing that in some instances the involvement of parents in a minor's abortion decision will be harmful to both the minor and the family relationship. These affidavits disclose that in some cases parents will pressure the minor, causing great emotional distress and otherwise disrupting the family relationship. Affidavit of Paul Savidge, M.D., at 3. Notifying some parents of a child's pregnancy can create physical and psychological risks to the child. Affidavit of Nancy H. Stewart, M.D., at 9. In particular, it may cause an adolescent to delay seeking assistance with her pregnancy, increasing the hazardousness of an abortion should she choose one. Affidavit of Phillip G. Stubblefield, M.D., at 4; Affidavit of Carol Nadelson, M.D., at 3. The requirement of parent notification may cause some minors to refuse competent professional advice concerning a pregnancy or to seek out abortion providers who will illegally agree not to notify the parents. Stewart Affidavit at 9–10; Nadelson Affidavit at 2. Defendants argue that 22 Me.Rev.Stat.Ann. §§ 3792, 3853, requiring physicians to report possible cases of child abuse and neglect to the Department of Human Services and authorizing the Department to take an abused child under protective custody, are sufficient to protect minors from overbearing parents. It is clear, however, that the Department cannot protect children from parents who coerce a child's abortion decision in ways that are not physically abusive or neglectful.

For the foregoing reasons, the Court holds that plaintiffs have demonstrated a sufficient likelihood of success in establishing the unconstitutionality of Section 1597. They are therefore entitled to a preliminary injunction restraining that statute's enforcement.[5]

**B.  *22 Me.Rev.Stat.Ann. § 1598: Informed Consent***

Section 1598 of 22 Me.Rev.Stat.Ann., which is set forth in the Appendix, requires, in subsection 2, that the physician inform the woman that she is pregnant; of the number of weeks elapsed from the probable time of conception; of the particular risks associated with her pregnancy and the abortion technique to be used; of alternatives to abortion such as childbirth and adoption; and information concerning public and private agencies that will assist her to carry the fetus to term, including, if requested, a list of such agencies and the services available from each. Subsection 1 of Section 1598 requires the physician to wait at least 48 hours after informing the woman of the information contained in subsection 2 before performing the abortion, and to certify in writing that the woman gave her informed written consent, freely and without coercion. Subsection 3 of Section 1598 provides that the 48-hour waiting period shall not apply if an abortion is immediately necessary to preserve the life or health of the woman. A physician breaching these statutory duties is subject to criminal penalties under 22 Me.Rev.Stat. Ann. § 47.

Plaintiffs challenge as unduly burdening a woman's abortion decision (1) subsection 2's requirement that the physician counsel a woman in the manner required by that subsection and (2) subsection 1's requirement of a 48-hour waiting period between the informed consent counseling and the performance of the abortion.[6] The

---

5. In the only three cases presenting the same issue which have been called to the Court's attention, three district courts have struck down similar parental notification statutes as undue burdens on the minor's abortion decision. *Akron Center for Reproductive Health, Inc. v. City of Akron,* 479 F.Supp. 1172, 1202 (N.D.Ohio 1979); *Leigh v. Olson,* Civil No.

A3–79–78 (D.N.D. July 9, 1979) at 4–5; *Womens Services, P.C. v. Thone,* CV 79–L–85 (D.Neb. Apr. 20, 1979) at 7–8.

6. Plaintiff Stewart also challenges a further requirement of subsection 1 that the physician certify in writing the woman's age based upon proof of age offered by her. The only reasonable state interest served by this requirement

Court has concluded that plaintiffs have failed to show a sufficient likelihood of success in establishing that the informed consent requirement of subsection 2 unduly burdens a woman's abortion decision, but that plaintiffs have demonstrated a sufficient likelihood of success in establishing that the 48-hour waiting period requirement of subsection 1 impermissibly burdens a woman's abortion decision.

■ 1. *Section 1598(2): Informed Consent Counseling.* Analysis of subsection 2's informed consent requirement must begin with the Supreme Court decision in *Planned Parenthood v. Danforth, supra.* In *Danforth* the Court upheld the provision of the Missouri abortion statute mandating that a woman, prior to submitting to a first trimester abortion, certify in writing her informed and freely given consent to the procedure. *Id.,* 428 U.S. at 65–67, 96 S.Ct. 2831. The Court acknowledged that no other Missouri statute, with limited exceptions, required a patient's prior written consent to surgery, but concluded that

> such a requirement for termination of pregnancy even during the first stages, in our view, is not in itself an unconstitutional requirement. The decision to abort, indeed, is an important, and often a stressful one, and it is desirable and imperative that it be made with full knowledge of its nature and consequences. The woman is the one primarily concerned, and her awareness of the decision and its significance may be assured, constitutionally, by the State to the extent of requiring her prior written consent.

*Id.* at 67, 96 S.Ct. at 2840.

Plaintiff Stewart asserts that it is medically unnecessary for the physician to give the woman the informed consent information required by subsection 2, and that the statute is no more than "a burdensome set of regulations designed to discourage wom-en from having abortions." In particular, plaintiff challenges the requirement that the physician advise a woman of alternatives to abortion and, if requested, furnish a list of agencies which can assist her to carry the fetus to term. Plaintiff argues that subsection 2 impermissibly impedes the woman's right to choose to abort and improperly interferes with the woman-physician relationship. She points out that in *Danforth* the Court accepted as the meaning of informed consent "the giving of information to the patient as to just what would be done and as to its consequences," and the Court cautioned that "[t]o ascribe more meaning than this might well confine the attending physician in an undesired and uncomfortable straitjacket in the practice of his profession." *Id.* at 67 n. 8, 96 S.Ct. at 2840 n. 8.

Plaintiff has offered no evidence that persuades the Court that the information subsection 2 requires the physician to give would measurably impede the exercise of the woman's abortion decision. The statutory requirement rationally serves the state's legitimate interest in assuring that the woman makes a fully informed decision. *See Planned Parenthood v. Danforth, supra* at 67, 96 S.Ct. 2831. Requiring the physician to inform the woman that she is pregnant, of the probable number of weeks since conception, and of the risks associated with her pregnancy and the method of abortion to be used clearly furthers that interest. The courts have consistently sustained similar informed consent provisions. *Wolfe v. Schroering,* 541 F.2d 523, 526 (6th Cir. 1976); *Akron Center for Reproductive Health, Inc. v. City of Akron, supra* note 5, 479 F.Supp. at 1202; *Doe v. Deschamps,* 461 F.Supp. 682, 685–86 (D.Mont. 1976); *Wynn v. Scott,* 449 F.Supp. 1302, 1316–17 (N.D.Ill.1978) (three-judge panel), *aff'd sub nom. Wynn v. Carey,* 599 F.2d 193, 194 (7th Cir. 1979). Requiring the physician to advise the woman as to the alternative to

---

would be to assure compliance with Section 1597, the parent notification statute. Since the Court has concluded that the latter statute is unconstitutional, no rational state interest can be served by requiring a woman to furnish proof of her age. Although the burden may not be substantial, the requirement clearly impinges upon the effectuation of the woman's abortion decision, and a preliminary injunction enjoining its enforcement is appropriate.

abortion additionally serves the state's legitimate interest in encouraging childbirth and protecting a potential life. *See Maher v. Roe, supra,* 432 U.S. at 473, 97 S.Ct. 2376; *Beal v. Doe,* 432 U.S. 438, 445–46, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977); *Roe v. Wade, supra,* 410 U.S. at 162, 93 S.Ct. 705. A similar provision was upheld in *Planned Parenthood Association v. Fitzpatrick,* 401 F.Supp. 554, 587–88 (E.D.Pa.1975) (three-judge panel) (opinion of Adams, J.), *summarily aff'd sub nom. Franklin v. Fitzpatrick,* 428 U.S. 901, 96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976). *But see Womens Services, P. C. v. Thone, supra* note 5, at 4–7.

Plaintiffs WCHC and Savidge also strenuously urge that it is medically unnecessary for the doctor himself to give informed consent information to the woman.[7] They argue that the woman is better served by having trained counselors consult with her. Savidge Affidavit at 2; Stubblefield Affidavit at 4–5. Plaintiffs do not demonstrate, however, how the woman's decision-making is burdened by having the physician personally give the information required by subsection 2. Even if a counselor has thoroughly advised the woman prior to her consultation with the physician, plaintiffs have not shown that requiring the doctor to ensure that the woman has received essential information imposes an undue burden on her decision. Nor is there evidence that any increased cost which might result from this requirement would be significant. The Supreme Court has stated that, absent impact upon the woman's freedom to make the abortion decision, the fact that a statutory requirement may make the physician's work more laborious or less independent does not violate the Constitution. *Whalen v. Roe, supra,* 429 U.S. at 604–05 n. 33, 97 S.Ct. 869, 51 L.Ed.2d 64. In sum, plaintiffs have not met their burden of showing that this requirement unduly burdens a woman's constitutional right. Since the provision rationally serves the state's legitimate interest in assuring a woman has information essential to an informed abortion decision, it survives constitutional scrutiny. *Accord,*

*Akron Center for Reproductive Health, Inc. v. City of Akron, supra* note 5, 479 F.Supp. at 1202.

The Court holds that plaintiffs have failed to demonstrate a sufficient likelihood of success in establishing the unconstitutionality of the informed consent requirement of subsection 2 of Section 1598. They therefore are not entitled to a preliminary injunction restraining the enforcement of that statute.

■ *2. Section 1598(1): The 48-Hour Waiting Period.* Plaintiffs have shown a sufficient likelihood of success in establishing that subsection 1's requirement of a 48-hour waiting period between the informed consent counseling and the performance of the abortion is unconstitutional scrutiny. It is clear from the record that the burden imposed on the woman's abortion decision is "legally significant." *Planned Parenthood v. Danforth, supra,* 428 U.S. at 81, 96 S.Ct. 2831. Not only does the evidence disclose that a 48-hour waiting period may increase the medical risk, emotional stress and financial cost of an abortion to the woman, but, perhaps most significantly, a woman who has chosen to have an abortion would be *prevented,* at least temporarily, from effectuating that decision. The Supreme Court has recently reaffirmed that "direct state interference," *Maher v. Roe, supra,* 432 U.S. at 475, 97 S.Ct. 2376 and "direct obstacles," *Colautti v. Franklin,* 439 U.S. 379, 386 n. 7, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979), may not be used to further otherwise valid state interests in regulating abortions.

In the present case, plaintiffs have introduced affidavits of expert witnesses and recent medical studies which demonstrate that increased medical risks, emotional trauma and financial costs may result from any delay in effectuating a woman's abortion decision. This record shows that the mandatory 48-hour waiting period in practice will delay some abortions longer than two days, perhaps as long as a week, be-

---

**7.** Plaintiffs' argument will be considered even though the Maine court might interpret the statute not to require that the doctor personally inform the woman.

cause of scheduling difficulties at the abortion facility and in the patient's life. The record discloses that any delay increases the risk to the woman's health: the risk of major complications increases 20 to 30 percent each week of delay, and the risk of death increases about 50 percent each week. Stubblefield Affidavit at 2; Savidge Affidavit at 2; Cates, Gold & Selik, *Regulation of Abortion Services: For Better or Worse?* (manuscript provisionally accepted for publication in the New England Journal of Medicine, June 11, 1979) at 6; Cates, Schulz, Grimes & Tyler, *The Effect of Delay and Method Choice on the Risk of Abortion Morbidity,* 9 Fam. Plan. Perspectives 266, 267 (Nov.-Dec. 1977). The delay can also cause a woman additional emotional distress. Savidge Affidavit at 2. And by requiring a second trip to the doctor, the provision will increase the expense and inconvenience to the woman, especially to those, such as many of plaintiff Stewart's patients, who have to travel long distances to the physician's office. Stewart Affidavit at 1–2. It is also possible that the delay will cause a first trimester abortion to become a second trimester abortion, thereby substantially increasing both the medical risks and the costs to the woman. Stubblefield Affidavit at 3.

Finally, the record demonstrates that the "vast majority" of women have no doubts about their abortion decision after talking with the doctor for the first time. Stewart Affidavit at 7; Savidge Affidavit at 2. Most have considered the options available to a pregnant woman, and many have consulted with counseling agencies prior to scheduling an appointment with a doctor. Affidavit of Norine Jewell, at 2–3. Thus, for many women the waiting period will only serve to delay the effectuation of their firm desire to terminate their pregnancies.

The state interests asserted by defendants in support of the waiting period requirement are that it assures that the woman will make an informed decision with time to consider all relevant information after receiving it, and that she will not have postdecisional regrets. *See* Swigar, Breslin, Pouzzner, Quinlan & Blum, *Interview Follow-up of Abortion Applicant Dropouts,* Obstet. & Gynecol. Survey 96–97 (1977); Bracken & Kasl, *Delay in Seeking Induced Abortion: A Review and Theoretical Analysis,* 121 Am.J. Obstet. Gynecol. 1008, 1016 (1975). While these are valid state interests, it has not been demonstrated that the 48-hour waiting period would induce any women to rethink their position. Of the five reasons given by the cited articles which induce a woman to change her mind and carry the fetus to term, four deal with the moral concerns and personal situation of the woman, and only one relates to the information the patient must be given under subsection 2. That reason, fear of the operation, is alleviated by counseling and therefore not reinforced by a waiting period. *See* Swigar *et al., supra* at 96. In short, defendants have not shown that the state interests they assert are sufficiently compelling to justify the substantial burden on the woman's abortion decision imposed by the 48-hour waiting period.

The Court holds that plaintiffs have demonstrated a sufficient likelihood of success in establishing the unconstitutionality of the 48-hour waiting period requirement of Section 1598(1). They therefore are entitled to a preliminary injunction restraining the enforcement of that statute.[8]

8. Other courts are split in their evaluation of the requirement of a waiting period in statutes regulating performance of abortions. Several courts have struck down or preliminarily enjoined waiting periods. *Wynn v. Carey,* 599 F.2d 193, 196 & n. 6 (7th Cir. 1979) (48 hours); *Friendship Medical Center, Ltd. v. Chicago Board of Health,* 505 F.2d 1141, 1150–52 (7th Cir. 1974) (24 hours); *Leigh v. Olson, supra* note 5, at 4 (48 hours); *Aware Woman Clinic, Inc. v. City of Cocoa Beach,* Case No. 77–361–Orl–Civ–Y (M.D.Fla. Apr. 21, 1978) at 24 (24 hours); *Womens Services, P.C. v. Thone, supra* note 5, at 7 (48 hours); *Mobile Women's Medical Clinic, Inc. v. Board of Commissioners,* 426 F.Supp. 331, 335 (S.D.Ala.1977) (24 hours). An almost equal number of courts have upheld similar provisions. *Wolfe v. Schroering, supra* at 526 (24 hours); *Planned Parenthood v. Blanton,* No. 78–2310 (W.D.Tenn. Aug. 31, 1979) at 6–7 (48 hours); *Akron Center for Reproductive Health, Inc. v. City of Akron, supra* note 5, 479 F.Supp. at 1202 (24 hours).

## V

### ORDER

In accordance with the foregoing, it is ORDERED as follows:

(1) That defendants, their successors, agents, employees and assigns are hereby preliminarily enjoined and restrained, until the further order of the Court, from enforcing the following provisions of the Revised Statutes of the State of Maine:

1. 22 Me.Rev.Stat.Ann. § 1597;

2. The second and third sentences of 22 Me.Rev.Stat.Ann. § 1598(1).

(2) That this preliminary injunction issue without the giving of security by plaintiffs.

(3) That in all other respects, plaintiffs' motions for a preliminary injunction are DENIED.

### APPENDIX

22 Me.Rev.Stat.Ann. § 1597:

§ 1597. *Parental notification of minor's decision to have an abortion*

1. Definitions. As used in this section, unless the context indicates otherwise, the following terms shall have the following meanings.

A. "Emancipated" means the person has surrendered the rights of a minor in relation to her parent's duties to her and that the parents have surrendered the care, custody and earnings of the minor.

B. "Minor" means a person who is less than 17 years of age.

2. Notice required. A person shall not perform an abortion on an unemancipated minor without first giving notice to one of her parents or guardians of his intention to perform that abortion or notifying the Department of Human Services of his inability to give notice. Notice shall be given as follows.

A. The person who will perform the abortion shall give actual notice at least 24 hours before performing the abortion.

B. If actual notice cannot be given, he shall serve written notice by certified mail to the last known address of the parent or guardian. This notice shall be mailed at least 48 hours before performing the abortion.

C. If he cannot give notice as required under paragraphs A or B, he shall notify the Department of Human Services in writing of his inability to give notice. The notice shall be confidential and not open to public inspection. This notice shall contain:

(1) A statement of his intention to perform an abortion; and

(2) A statement that he has been unable to give notice to the parents or guardian of the minor.

D. The person who will perform the abortion shall not perform that abortion for 24 hours after notifying the department that he was unable to give notice.

3. Evidence of notice. That person giving notice shall obtain written evidence that notice was given. That evidence may be a signed acknowledgement of the recipient or a sworn affidavit by the person giving notice that it was given. If he is unable to give notice, he shall retain a dated and sworn statement that he has notified the department of his inability to give notice.

4. Exception. If, in the best clinical judgment of an attending physician, the life or health of the minor will be endangered if the abortion is not performed immediately, the notice requirements of subsection 2 shall not apply. The person who performed the abortion shall notify, actually or in writing, one of the parents or guardians of the abortion, within 24 hours of that abortion or notify the department of his inability to give notice.

5. Consent not required. Nothing in this section shall require the consent of the parents or legal guardian of the minor to the minor's abortion.

22 Me.Rev.Stat.Ann. § 1598:

§ 1598. *Informed consent to abortion*

1. Consent by the woman. No physician shall perform an abortion unless, prior to the performance, the attending physician, certifies in writing that the woman gave her informed written consent, freely and without coercion. He shall also certify that, not less than 48 hours prior to her consent, he informed the woman of the information contained in subsection 2. He shall further certify in writing the pregnant woman's age based upon proof of age offered by her.

2. Informed consent. In order to insure that the consent for an abortion is truly informed consent, the attending physician shall inform the woman in a manner which, in his professional judgment, is not misleading and which will be understood by the patient, of at least the following:

A. According to his best judgment she is pregnant;

B. The number of weeks elapsed from the probable time of the conception;

C. The particular risks associated with her own pregnancy and the abortion technique to be performed; and

D. Alternatives to abortion such as child birth and adoption and information concerning public and private agencies that will provide the woman with economic and other assistance to carry the fetus to term, including, if the woman so requests, a list of these agencies and the services available from each.

3. Exception. The 48-hour period required in subsection 1 shall not be required if an abortion is immediately necessary to preserve the life or health of the pregnant women.