**MANCHESTER PRINTING PRESSMEN AND ASSISTANTS UNION, LOCAL NO. 271–M**

v.

**UNION LEADER CORPORATION.**

C 90–438–S.

United States District Court, D. New Hampshire.

Sept. 28, 1990.

---

James R. Muirhead, Manchester, N.H., for plaintiff.

Richard A. Perras, Boston, Mass., for defendant.

## ORDER

STAHL, District Judge.

This case presents a labor dispute between Local 271–M of the Manchester Printing Pressmen and Assistants Union ("Local 271–M") and the Union Leader Corporation, publisher of the Union Leader, a daily newspaper published in New Hampshire. The Court has previously denied Local 271–M's motion for a temporary restraining order because Local 271–M failed to comply with Rule 65, Fed.R.Civ.P.

Presently before the Court is Local 271–M's motion for a preliminary and permanent injunction which seeks maintenance of the status quo through medium of a court order prohibiting the Union Leader from continuing full operation of a new press with rescheduled "manning" schedules and eliminating five positions within the bargaining group. A hearing on the motion was held on Friday, September 28, 1990, at which Local 271–M presented testimony from its president, Richard Burgeron, and counsel for both sides (James R. Muirhead for the plaintiff, and Richard A. Perras for the defendant) presented arguments.

As noted in the Order denying Local 271–M's motion for a temporary restraining order, this Court's authority to issue injunctions related to labor disputes is strictly circumscribed by the Norris–LaGuardia Act, 29 U.S.C. § 101, *et seq.*[1] Judicial exceptions to that rule have been recognized, beginning with the Supreme Court's decision in *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In *Boys Markets*, the Court held that where the strike sought to be enjoined is over a grievance that both sides are contractually bound to arbitrate, a court may enter an injunction otherwise warranted under ordinary principles of equity and may order the employer to arbitrate as a condition of his obtaining the anti-strike injunction.

More recently, in *Independent Oil & Chem. Wkrs. v. Procter & Gamble*, 864 F.2d 927 (1st Cir.1988), this Circuit's Court of Appeals provided a clear definition of the governing law.

Given the weighty reasons supporting refrainment, it is unsurprising that restraining orders addressed to arbitrable matters are seldom to be had. The availability of injunctive relief in this context represents an exception to the strong prohibition contained in 29 U.S.C. § 101. The sole *raison d'etre* for the exception is to "enforce[ ] the obligation that the [recalcitrant party] freely undertook under a specifically enforceable agreement to submit disputes to arbitration." *Boys Markets*, 398 U.S. at 252–53, 90 S.Ct. at

---

**1.** In relevant part, the Norris LaGuardia Act states the following:

No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

1593 (footnote omitted); *see also Buffalo Forge,* 428 U.S. [397] at 408, 96 S.Ct. [3141] at 3148 [49 L.Ed.2d 1022 (1976)]. Because the exception cannot be allowed to engulf the rule, it must be tightly confined. Injunctions of this sort are, quite appropriately, a rarity. Unless some plain necessity exists, the escape hatch remains shut.

*Id.* at 929 (footnote omitted).[2]

Plaintiff must satisfy four criteria to obtain a preliminary injunction:

(1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Planned Parenthood League of Mass. v. Bellotti,* 641 F.2d 1006 (1st Cir.1981) (quoting *Women's Community Health Ctr., Inc. v. Cohen,* 477 F.Supp. 542, 544 (D.Me. 1979)).

Plaintiff asserts two arguments to support its claim that the failure to issue the injunction will result in irreparable harm. First, it argues that the layoffs will cause an unacceptable risk of injury because the workers will be required to continue working overtime hours on dangerous machinery. To support this contention, plaintiff presented testimony by Local 271–M President Richard Burgeron. Mr. Burgeron testified that the new Flexo Motter FX–4 press is substantially different from the old "Goss" headliner and that the Union Leader has not trained all the personnel who will work on the new press. Mr. Burgeron also testified that he has worked approximately 50 hours per week on the new press, while other members of the unit have averaged 50–60 hours per week. He also testified that all journeymen were fully trained on the new press and that historically apprentices were routinely trained by the journeymen. The Court has no reason to disbelieve this testimony. Nonetheless, there was no credible testimony suggesting that workers are likely to be injured as a result of this scheduling.

Plaintiff admits that the new press has been running with fewer workers than required at the old press and in fact testified that five members of the unit remained until recently at the old plant of the Union Leader even though the old Goss press was not being operated. Plaintiff also concedes that relief would not be available if the only harm at issue here was the loss of five jobs. It is well established that

the availability of unemployment relief, health insurance, and, in certain situations, financial support from the union will help mitigate the financial pressures felt by the displaced employee awaiting arbitration. Moreover in the event the employer prevails in arbitration, the arbitrator's award of backpay could, and realistically would, be used to repair any damage to credit stature or to repurchase goods repossessed in the interim.

*Aluminum Workers Intern. v. Consol. Aluminum Corp.,* 696 F.2d 437, 444 (6th Cir.1982).

Second, plaintiff argues that the contract will be irreparably violated if an injunction is not granted because the Union Leader agreed not to put the new press into operation until the parties had either agreed to a new manning schedule or such schedule was implemented following arbitration. The Court finds no authority to support this argument.

Section 3 of the collective bargaining agreement provides:

If during the life of this Agreement, presses, automatic pasters, or equipment of sizes or types not covered by this Agreement shall be installed, including offset presses, the manning schedule of

---

**2.** To support its request for an injunction, Local 271–M must first demonstrate that the grievance is arbitrable. *Independent Oil & Chem. Wkrs., supra,* 864 F.2d at 930. In this case, the preliminary hurdle is not at issue since both parties acknowledge the issue to be arbitrable. In fact, the president of Local 271–M testified that the Union Leader has already submitted the issue to arbitration and each side has appointed its arbitrators who will next appoint the independent member of the panel.

the operation thereof shall be determined prior to the operation of such presses or equipment in actual production, either by mutual consent, or on failure to agree, by arbitration as provided in Section 20.

The Court finds no violation of this provision under the circumstances presented. Local 271–M concedes that the new press is now in operation. Management properly notified the union pursuant to Section 12 of the contract of the pending layoffs. *See* plaintiff's exhibit 2. The Court finds no merit in its argument that Section 3 has been effectively eviscerated since arbitration may result in a determination that the present manning is inappropriate.

It is now well settled that, in disputes of this type, "courts must not interfere unless the actions taken or threatened by one of the parties would render the outcome of any arbitration which might follow meaningless." *Independent Oil & Chem. Wkrs., supra,* 864 F.2d at 930. *See also Pittsburgh Newspaper Printing Pressmen's Union No. 9 v. Pittsburgh Press Co.,* 479 F.2d 607 (3rd Cir.1973) (preliminary injunction denied under circumstances almost identical to those presented here). In this case, the Court finds that the outcome of arbitration will not be rendered meaningless. The arbitration award can provide for reinstatement, backpay, and other relief if such is found to be appropriate.

Accordingly, because plaintiff has failed to show that the denial of the requested order will lead to irreparable harm, plaintiff's motion for preliminary and permanent injunctions must be and herewith is denied.

SO ORDERED.